ROBERT J. MALLOY, ESQUIRE (RM9222)
Robert J. Malloy, Esquire P.C.
2 North Maple Avenue
Marlton, New Jersey 08053
(856) 596-2225
ecf.rjmalloylaw@gmail.com
Attorneys for South Jersey Federal Credit Union

|  |  |  |
|---|---|---|
| IN RE | : | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
|  | : |  |
| SCHEMELIA, MARGARET |  | CASE NO. 19-15830- JNP |
|  | : | CHAPTER 13 |
| Debtor(s). | : | Honorable Jerrold N. Poslusny, Jr. |
|  | : | Hearing Date: |
|  | : |  |

## OBJECTION TO CONFIRMATION

South Jersey Federal Credit Union ("Credit Union"), by and through its counsel Robert J. Malloy, Esq. P.C., hereby objects to confirmation of the proposed Chapter 13 Plan ("Plan") in the above-captioned case on the following grounds:

1.  The Credit Union is a federal credit union organized in accordance with the provisions of the Federal Credit Union Act (the "Act"), 12 U.S.C §1751 *et seq*. The Credit Union is a non-profit financial cooperative owned and operated by its members. The members pool their financial assets to provide funds for loans and a variety of other financial services. Rather than paying profits to stockholders, credit unions return earnings to members in the form of dividends or improved services.

2.  The Debtor is a member of the Credit Union.

3.      On or about January 24, 2011, the Debtor approached the Credit Union for the purposes of obtaining a mortgage loan in the original principal amount of $80,000.00 and bearing interest at an annual rate of 6.99% (the "Loan") secured by certain real property located at 808 Mercer Street, Gloucester, NJ 08030 and more particularly described as Block 13, Lot 5 on the Tax Map of the City of Gloucester, Camden County ("Property").

4.      In connection with the Loan, the Debtor(s) executed a LOANLINER Loan and Security Agreements and Disclosure Statement (the "Note") and a Mortgage (the "Mortgage") in favor of the Credit Union.  Attached hereto and fully incorporated herein as <u>Exhibit A</u> are true and correct copies of the Note and Mortgage.

5.      The Mortgage was recorded on February 3, 2011, as File Number 2011008554, at Book 9369, beginning at Page 81.

6.      The regular monthly payment due and owing from the Debtor to the Credit Union, pursuant to the Note, was $625.00. <u>Exhibit A</u>.

**<u>THE PLAN IS FILED IN BAD FAITH, AS THE PROPERTY IS NOT PART OF THE DEBTOR'S BANKRUPTCY ESTATE, AS FORECLOSURE AND SHERIFF'S SALE HAVE BEEN COMPLETED AND THE PROPERTY HAS BEEN TRANSFERRED BY RECORDED SHERIFF'S DEED</u>**

7.      In her Petition and Plan, the Debtor indicates that the Property is an asset of her bankruptcy estate.  However, the Mortgage has been foreclosed and a sheriff's deed has been recorded, and the Debtor has not objected or exercised her right to redeem within the required time period.

8.  Following the execution of the Note and Mortgage, the Debtor repeatedly failed to pay the property taxes and water and sewer assessments due and owing on the Property, which constituted a default under the terms of the Mortgage.  <u>Exhibit A</u>.

9.  In 2016, as a result of the Debtor's default, the Credit Union brought a foreclosure action against the Property in the Superior Court of New Jersey, Docket No. SWC-F-013949-16.  The Debtor did not file an answer in this action or otherwise defend.

10.  The foreclosure action was prosecuted to completion, and on November 19, 2018, the Superior Court of New Jersey issued a Final Judgment in foreclosure in favor of the Credit Union, in the aggregate amount of $93,054.34.  A true and correct copy of the Final Judgment and the accompanying Writ of Execution are attached hereto and incorporated herein as <u>Exhibit B</u>.

11.  The Property was sold to the Credit Union at sheriff's sale on February 6, 2019.  The Credit Union thereupon assigned its bid to 1617 Properties, LLC.

12.  Thereafter, by Sheriff's Deed dated February 15, 2019, the Property was conveyed to 1617 Properties, LLC.

13.  Debtor did not file an objection to the sheriff's sale within the ten (10) day period set forth by New Jersey Rules of Court 4:65-5; nor did Debtor exercise her right to redeem the mortgage during this ten (10) day period.  Nor did the Debtor file for bankruptcy protection within this ten (10) day period.

14.  A writ of Possession for the Property was issued on February 22, 2019.  A true and correct copy of the Writ of Possession is attached hereto and incorporated herein as <u>Exhibit C</u>.

14. The Sheriff's Deed was recorded on March 19, 2019 in the Camden County Clerk's office as File Number 2019020263, in Deed-OR Book 11094, Page 1149. A true and correct copy of the recorded Sheriff's Deed is attached hereto and incorporated herein as <u>Exhibit D</u>.

15. Again, the Debtor did not file bankruptcy or exercise her right to redeem prior to the delivery of the Sheriff's Deed..

16. In fact, the Debtor did not file bankruptcy until March 22, 2019 (the "Petition Date")-- after the Credit Union and its assignee had obtained a Writ of Possession regarding the Property and after the Sheriff's Deed was delivered <u>and</u> recorded in the land records of Camden County and

17. The Property is not an asset of the Debtor's bankruptcy estate and should not be included in the Debtor's Plan.

## **THE PROPOSED PLAN IS PRIMA FACIE UNFEASIBLE**

18. The Credit Union incorporates Paragraphs 1-17 above as though set forth in full herein.

19. First, the Debtor's Plan is prima facie unfeasible because the Debtor does not in fact own the Property. The Debtor's Plan indicates that the Debtor intends to "modify" the Mortgage and to pay "arrears" through the Plan. Since the Debtor failed to timely object or redeem to the foreclosure and sale of the Property, and a deed has been recorded in favor of a third party, the Debtor does not have any right to or interest in the Property which would support the Debtor's request to modify the Mortgage. The Mortgage has been merged into the Final

Judgment, and while the Debtor does owe the sums due under the Final Judgment, redemption of the Mortgage is no longer an option.

20. Even if the Debtor did still have an opportunity to redeem the Mortgage, the Debtor would need to pay the "entire amount" secured by the Mortgage, including principal, interest, expenditures to preserve the Property (including taxes and assessments), and counsel fees.

21. In addition to the $93,054.34 due and owing from Debtor to the Credit Union pursuant to the Final Judgment in foreclosure, the Credit Union was obliged to incur an additional $19,190.04 in expenses to pay the property taxes and assessments due and owing on the Property which accrued during the pendency of the foreclosure action. A true and correct copy of the Debtor's tax bill for the Property, paid on March 5, 2019, is attached hereto and incorporated herein as <u>Exhibit E</u>.

22. The Debtor's Petition and Plan show that the Debtor cannot pay the "entire amount" needed to The Debtor's Schedules indicate that the Debtor has a monthly income of $1,405.00 (Schedule I) and monthly expenses of $2,075.00, leaving a monthly net deficit of $670.00. (Schedule J).

16. The Debtor's calculation of expenses includes a $450.00 monthly payment for mortgage costs and a $375.00 monthly payment for property taxes. (Schedule J).

17. However, if the Mortgage had not been foreclosed, the monthly payment due and owing from Debtor would have been $625.00. <u>Exhibit A</u>.

18. The current year taxes on the Property are $4,958.73, or $413.23 per month. A true and correct copy of the current tax assessment is attached hereto and incorporated herein as <u>Exhibit F</u>.

19. If the correct values are used for the mortgage payment and property tax payments, this results in an additional $213.23 shortfall between Debtor's income and expenses, for a net deficit of $883.23 per month.

20. Despite this deficit, the Debtor's Plan proposes to commit the sum of $200.00 per month for a period of 60 months, for a total Plan amount of $12,000.00. After payment of the attorney's fees of $4,000.00 indicated in the plan, plus administrative fees, this would leave less than $8,000.00 available for payment of the Credit Union's claim.

21. The Debtor's plan requests a modification of the Mortgage and indicates, in Section 4(a) that the Debtor proposes to cure default and maintain payments on the Mortgage.

22. However, the Mortgage has been foreclosed, Final Judgment has been entered in favor of the Credit Union, and the Property has been conveyed, all prior to the Petition Date.

23. The total amount due and owing to the Credit Union from the Debtor, as of the Petition Date, is $112,244.38, comprising the $93,054.34 due under the Final Judgment in foreclosure and the $19,190.04 paid post-foreclosure on the Debtor's account for property taxes and assessments.

24. The commitment amount proposed under the Debtor's Plan is entirely insufficient to pay the amount due and owing to the Credit Union.

25. The statement of Debtor's income and expenses set forth in Schedules I and J indicates a net shortfall which would make it impossible for the Debtor to meet her obligations to pay the Mortgage and the property taxes on the Property, even if the Mortgage had not already been foreclosed.

26. Accordingly, the Debtor's Plan is prima facie unfeasible. As such, the plan cannot be confirmed and the Debtor(s) has proposed the plan in bad faith.

## EVEN IF THE DEBTOR STILL OWNED THE PROPERTY, THE DEBTOR'S PLAN, AS PROPOSED, WOULD NOT PROPERLY TREAT THE MORTGAGE AS A SECURED CLAIM

27. Even if the Mortgage had not already been foreclosed and a deed recorded, the Debtor's plan would not properly treat the Mortgage as a secured claim.

28. The Mortgage is a claim that is secured only by a security interest in real property that is the Debtors' principal residence. There is equity in the Property above and beyond the Credit Union's Mortgage. Consequently, the Plan violates 11 U.S.C. §1322(b)(2) and 11 U.S.C. §1325(a)(5). Since there is equity in the Property above and beyond the mortgage of the Credit Union, the Credit Union's Mortgage **must** be paid in full. As such, the Plan cannot be confirmed and the Debtor(s) has proposed the Plan in bad faith.

## INTEREST ON CLAIM

29. The Credit Union is entitled to interest on its claim pursuant to 11 U.S.C. §506(b) and 11 U.S.C. §1325(a) (5). *See also*, *Till v. SCS Credit Corporation,* 541 U.S. 465, 124 S.Ct. 1951 (2004). Under *Till,* a Debtor may adjust or cram down an interest rate on a secured obligation. The Supreme Court in *Till* concluded that the proper formula for determining the appropriate interest rate requires an adjustment of the national prime interest rate based upon risk of nonpayment. The Supreme Court suggested that an adjustment from 1% to 3% may be appropriate depending on the particular case. The current prime national prime rate of interest is 5.50%. The risk of nonpayment in this case is extremely high—the Debtor defaulted on her obligations under the Mortgage and has repeatedly failed to pay property taxes, which the Credit

7

Union was obligated to pay on her behalf. Accordingly, a three percent (3.00%) adjustment would be appropriate. The Loan interest rate of 6.99% is therefore appropriate.

## **RELIEF UNDER §1325(a)(3)**

30. The Credit Union incorporates paragraph 1 through 29 above as if fully set forth herein.

31. To determine whether a bankruptcy is brought in good faith, the Court must determine whether or not there has been an abuse of the provisions, purpose or spirit of Chapter 13. *In re Smith,* 848 F.2d 813, 818 (7th Cir. 1988).

32. A plan should not be confirmed which lacks fundamental fairness in dealing with the debtors' creditors and it does not reflect a sincere desire to repay creditors in accordance with the spirit and the purpose of Chapter 13. *In re Jones*, 119 B.R. 996 (Bankr.N.D.Ind. 1990); *In re Reyes*, 106 B.R. 155 (Bankr.N.D.Ill. 1989).

33. The Plan, as proposed, does not reflect a sincere desire to repay creditors. It overlooks the fact that the Credit Union's Mortgage has already been foreclosed, that Final Judgment has been entered in favor of the Credit Union, and that the Property has been conveyed subsequent to foreclosure. It proposes, instead, to "modify" the foreclosed Mortgage and to make payments of arrears. Yet the Plan does not specify any payment to the Credit Union. The Plan commitment amount is insufficient to pay the amount owed to the Credit Union, and the Debtor's income is not adequate to meet the commitment amount, or to make mortgage and tax payments on the Property.

20. For all of the reasons above, the Court may not confirm the Chapter 13 Plan pursuant to 11 U.S.C. 1323(a) (1).

**WHEREFORE**, the Credit Union respectfully requests that the Court deny confirmation of the proposed Chapter 13 Plan.

                                  ROBERT J. MALLOY, ESQ. P.C.
                                  Counsel for South Jersey Federal Credit Union

                                  By: /s/ ROBERT J. MALLOY, ESQ.

Dated: April 16, 2019

## **CERTIFICATE OF SERVICE**

       I, Robert J. Malloy, Esquire hereby certify that I caused true and correct copies of the Objection to Confirmation and this Certificate of Service to be served upon the following persons via E-filing and United States mail, first class, postage prepaid on April 16, 2019, as follows:

| | |
|---|---|
| Isabel C. Balboa<br>Chapter 13 Standing Trustee<br>Cherry Tree Corporate Center<br>538 Route 38, Suite 580<br>Cherry Hill, NJ 08002<br>Trustee | Mark W. Ford, Esquire<br>Law Offices of Mark W. Ford, LLC<br>PO Box 110<br>4 ½ North Broadway<br>Gloucester City, NJ 08030 |

                                           /s/ Robert J. Malloy, Esq.